## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH LAWSON, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| | ) | |
| MA OF ROSLYN, LCC d/b/a MAZDA OF ABINGTON, | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

### COMPLAINT

AND NOW COMES Plaintiff, Elizabeth Lawson, ("Plaintiff" or "Ms. Lawson"), by and through her undersigned counsel, and brings this Complaint seeking legal and equitable relief for the sex discrimination, sexual harassment, hostile work environment, and retaliation she faced while employed by MA of Roslyn, LLC d/b/a Mazda of Abington ("Mazda") in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA"). Ms. Lawson states and avers the following:

### JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, and/or 1343. This action is authorized and instituted pursuant to Title VII.

2. Pursuant to 28 U.S.C. § 1367(a) and pursuant to 28 U.S.C. § 1331, The United States District Court for the Eastern District of Pennsylvania has supplemental jurisdiction over Ms. Lawson's state-law claims, which arise from the case and/or controversy as the aforementioned claims, for which this Court has original jurisdiction.

3.	The unlawful employment practices and wrongful termination were committed by the Defendant in or around Montgomery County, Pennsylvania. Therefore, the United States District Court for the Eastern District of Pennsylvania is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

4.	Plaintiff timely exhausted her administrative remedies as to her Title VII claims against Defendant by timely filing a charge against this Defendant on or about May 16, 2024, jointly with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") at 530-2024-06030. Plaintiff's PHRC and EEOC Charges are incorporated by reference as if fully set forth herein. On September 3, 2025, the EEOC emailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter), advising her of her right to bring this action. Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

**PARTIES**

5.	Elizabeth Lawson is an adult individual who presently resides in Morrisville, Pennsylvania.

6.	At all times relevant hereto, Ms. Lawson was an employee of Defendant within the meaning of Title VII.

7.	Defendant, MA of Roslyn, LLC d/b/a Mazda of Abington, is a Virginia corporation with a registered address at 1902 Association Drive, Reston, VA 20191. Mazda operates a car dealership and repair shop located at 1601 Easton Road, Willow Grove, Pennsylvania 19090.

**FACTUAL BACKGROUN COMMON TO ALL CLAIMS**

8.	Ms. Lawson was hired by the Mazda in or around March 2023 to work in the position of Technician at the dealership and repair shop in Willow Grove, PA.

9. Just three months into her employment, Mazda promoted Ms. Lawson to Senior Technician.

10. In or about November 2023, Mazda hired a Service Manager named Patrick Clark.

11. Mr. Clark became Ms. Lawson's direct supervisor upon his hire.

12. Prior to Mazda hiring Mr. Clark, Ms. Lawson was an exemplary employee, never receiving a disciplinary action, warning, or negative review.

13. Prior to Mazda hiring Mr. Clark, Ms. Lawson was the top performer in her department.

14. Immediately following Mr. Clark's hire, he started sexually harassing Plaintiff in a severe and pervasive manner.

15. Mr. Clark often texted Ms. Lawson after working hours. Many of these texts were not related to work and sexual in nature.

16. Mr. Clark behaved in an inappropriate and flirtatious manner to Ms. Lawson at work as well. This often occurred in the presence of other coworkers at Mazda.

17. Mr. Clark sent the following text messages to Ms. Lawson while he was her direct supervisor at Mazda:

    a. "Chatting with you is great, work chores suck. Lol"

    b. "What's for dinner?"

    c. "Sounds yummy. I didn't get an invite. LOL"

    d. "I was joking. LOL. I'm not your boss on the weekends. Haha"

    e. (A picture of Mr. Clark) "Home clothes are so much better than a suit. Lol."

    f. "Am I still your boss after 5?"

    g. "Am I still your boss after 5?"

  h. "Now it's after 5 and I'm no longer your boss……"

  i. "Vibrate. (emoji sticking out tongue) Good morning."

  j. "You were hot yesterday. You know, when you were on fire."

  k. "I had to add the last part to cover my ass. lol (emoji laughing)"

18. Ms. Lawson often reminded Mr. Clark that he was married in response to his inappropriate text messages.

19. In response, Mr. Clark texted, "Sharing is caring."

20. Ms. Lawson attempted to avoid Mr. Clark as much as possible at work, attempting to escape his severe sexual harassment.

21. Unfortunately, Mr. Clark was Ms. Lawson's direct supervisor, so that task was impossible.

22. Despite Ms. Lawson being the top performer in her department, Mr. Clark began giving her fewer hours of work at Mazda.

23. Ms. Lawson reported Mr. Clark's severe and pervasive sexual harassment and retaliation in the form of fewer hours to Laura Goodman and Brian Metz in Mazda's HR department.

24. On or about December 14, 2023, Ms. Lawson emailed Brian Metz about Mr. Clark's continued sexual harassment. Ms. Lawson wrote, "I have messages from my boss that are not welcomed and put me in situations where I do not know how to act or respond because I don't want to get fired."

25. Brian Metz called Ms. Lawson and asked if she wanted to make an "official report." Ms. Lawson confirmed that she did.

26. The very next day, Ms. Lawson realized that she did not receive a longevity bonus from Mazda due that month. Ms. Lawson immediately reached out to Larry Shifflet to inquire about it.

27. Mr. Shifflet advised that she did not receive the bonus because she had received "a couple of write ups."

28. Ms. Lawson explained to Mr. Shifflet that she had only received one write up and that her disciplinary paperwork indicated that she would still be eligible for the bonus.

29. On or about December 19, 2023, Ms. Lawson emailed Brian Metz twice, explaining that she was still being excluded from work, being isolated at work, and still having her hours cut by Mr. Clark.

30. Mr. Metz did not respond to Ms. Lawson's emails.

31. Soon after, Ms. Lawson sent photographs of Mr. Clark's inappropriate text messages to Mazda's HR department.

32. Upon information and belief, nothing was done in response to Ms. Lawson's reports of severe and pervasive sexual harassment at work by Mr. Clark.

33. Upon information and belief, nothing was done in response to Ms. Lawson's reports of retaliation by Mr. Clark.

34. After reporting Mr. Clark's clear retaliation for rejecting his attempted advances, Ms. Lawson's hours and treatment at work were not remedied by Mazda.

35. On or about January 2, 2024, Ms. Lawson had to leave work early with an illness.

36. Ms. Lawson called off the following day related to the same illness.

37. On or about January 4, 2024, Mr. Metz called Ms. Lawson and demanded a doctor's note for her absence. Mr. Metz threatened that Ms. Lawson would be terminated without the excuse.

38. Later that same day, Ms. Lawson sought medical treatment and obtained the requested documentation for Mazda.

39. On or about January 5, 2024, Ms. Lawson felt like she could not longer endure the pervasive sexual harassment and retaliation at Mazda from her direct supervisor.

40. As such, Ms. Lawson submitted her resignation.

41. Any reasonable person in Ms. Lawson's position would have resigned.

42. Ms. Lawson endured severe and pervasive sexual harassment from her direct supervisor at Mazda.

43. When Ms. Lawson rejected her supervisor's attempted advanced, he began retaliating against her.

44. As part of that retaliation, Mazda cut Ms. Lawson's hours.

45. Ms. Lawson reported both the sexual harassment and retaliation from her supervisor to Mazda's HR department.

46. Upon information and belief, Mazda did nothing in response to Ms. Lawson's reports.

47. Ms. Lawson was constructively discharged from her position at Mazda based on her sex in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.

48. Ms. Lawson was retaliated against for rejecting sexual advances from her direct supervisor in violation of Title VII of the Civil Rights Act of 1864 and the Pennsylvania Human Relations Act.

## COUNT I
### Sex Discrimination (Harassment/Hostile Work Environment and Disparate Treatment) in Violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et al.

49. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

50. Mazda is an "employer" as defined by Title VII.

51. During all relevant times, Elizabeth Lawson was an "employee" as defined by Title VII.

52. Mazda discriminated against Ms. Lawson on the basis of her sex in violation of Title VII by subjecting her to a hostile work environment/harassment based on her sex and retaliating against her for rejecting advances from her supervisor.

53. Ms. Lawson has been subjected to persistent sexual overtures by her male supervisor, including but not limited to, text messages after working hours by Mr. Clark.

54. This type of unwelcome conduct was severe and pervasive.

55. Mazda knew that this type of conduct occurred.

56. Specifically, many employees witnessed Mr. Clark behave inappropriately towards Ms. Lawson at work, and Ms. Lawson reported Mr. Clark's inappropriate behavior to Mazda's HR department multiple times.

57. Mazda was negligent and/or reckless in hiring Mr. Clark, training Mr. Clark, disciplining Mr. Clark, failing to terminate Mr. Clark, or take any remedial action upon learning of his sexual harassment of Ms. Lawson.

58. This led to a misogynistic environment in the workplace, which perpetuated a culture that allowed Mr. Clark to retaliate against Ms. Lawson for rejecting his advances and reporting his conduct to HR.

59. Ms. Lawson reported, in writing, severe sexual harassment and retaliation by Mr. Clark.

60. Mazda failed to take any type of appropriate remedial action against Mr. Clark.

61. Mazda intentionally favored Mr. Clark because of his sex.

62. Ms. Lawson faced retaliation in the form of isolation and cut hours at Mazda.

63. Ms. Lawson was constructively discharged after her report of sexual harassment, while Mr. Clark remained employed at Mazda.

64. Mr. Clark's sex was the motivating or determinative factor in Mazda's decision to treat him more favorably than Ms. Lawson, which resulted in the adverse employment action taken against Ms. Lawson—cutting her hours.

65. Ms. Lawson received no disciplinary actions, negative reviews, or write-ups during her employment with Mazda prior to Mr. Clark's hire.

66. As a direct and proximate result of Mazda's unlawful discriminatory conduct in violation of Title VII, Ms. Lawson has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

67. As a direct and proximate result of Mazda's unlawful discriminatory conduct in violation of Title VII, Ms. Lawson has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

68. Mazda's unlawful discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Ms. Lawson is entitled to an award of punitive damages.

WHEREFORE, Plaintiff seeks judgment against Mazda for actual and consequential damages, including but not limit to, lost wages, front pay and compensation for lost benefits, economic and compensatory damages, punitive damages, the costs of this action, including attorneys' fees, and such other relief deemed to be just and equitable.

### Count II

**Retaliation in Violation of the Civil Rights Act of 1964, 42, U.S.C. §§ 2000e et al.**

69. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

70. Plaintiff engaged in a protected action by reporting the disparate treatment she received at Mazda.

71. In response, Mazda retaliated against Plaintiff by isolating her at work and cutting her hours.

72. Mazda subjected Plaintiff to an adverse employment action when it cut her work hours, resulting in lost wages for Plaintiff.

73. As a direct and proximate result of Mazda's unlawful retaliatory conduct in violation of Title VII, Ms. Lawson has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

74. As a direct and proximate result of Mazda's unlawful retaliatory conduct in violation of Title VII, Ms. Lawson has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

75. Mazda's unlawful retaliatory actions constitute malicious, willful and wanton violations of Title VII for which Ms. Lawson is entitled to an award of punitive damages.

## **COUNT III**

**Discrimination and Retaliation in Violation of the Pennsylvania Human Relations Act**

76. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

77. This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT III arises out of the same facts, events and circumstances as in the above COUNTS I and II and therefore judicial economy and fairness dictate that this COUNT III be brought in this same Complaint.

78. At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

79. By engaging in the creation and fostering of a discriminatory environment based on Ms. Lawson's sex, Defendant violated those sections of the PHRA which prohibits discrimination based upon sex regarding the continuation and tenure of employment.

80. Defendant's constructive discharge of Plaintiff's employment was motivated by her sex and/or was in retaliation for her complaints of disparate treatment.

81. Defendant's unlawful and discriminatory practices complained of herein were intentional and done with malice or without reckless indifference to Plaintiff's state-protected rights.

82. As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to

compensatory damages for these injuries, in addition to the tangible economic losses she has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### DEMAND FOR JURY

WHEREFORE, Plaintiff demands judgment against Defendant, and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation and wrongful termination of Plaintiff pursuant to the Title VII and the PHRA;

b. That Plaintiff be awarded economic and compensatory damages to compensate for all costs associated with the discrimination and retaliation including lost wages and medical expenses;

c. That Plaintiff be awarded nominal damages;

d. That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   November 25, 2025

Respectfully Submitted,

*/s/ Amy Mathieu*
Amy E. Mathieu, Esquire
Pa. I.D. 323093
HKM EMPLOYMENT ATTORNEYS LLP
220 Grant Street
Suite 401
Pittsburgh, PA  15219
412.228.5393
amathieu@hkm.com

**JURY TRIAL DEMANDED**